1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ISRAEL HERMOSILLO,

                Petitioner,

      v.

WARDEN HOLLAND,

                Respondent.

)
)
)
)
)
)
)
)
)
)
)
)

Case No. EDCV 14-1443-JC

MEMORANDUM OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND SUPPLEMENT THERETO AND DISMISSING ACTION

## I.   SUMMARY

      On July 15, 2014, Israel Hermosillo ("petitioner"), a state prisoner proceeding *pro se*, formally filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254.[1]  On August 27, 2015, petitioner filed a Supplement to the Petition ("Supplement" or "Supp.").  Petitioner, who was convicted of multiple offenses in San Bernardino County Superior Court, claims that his

///

///

---

[1]The Petition was signed on June 11, 2014, was accompanied by a declaration in support of a request to proceed in forma pauperis which was signed on July 8, 2014, was postmarked on July 9, 2014, and was received by the Clerk and lodged on July 14, 2014.

Miranda[2] rights were violated and that his trial counsel was ineffective in failing to challenge a search of petitioner's residence.

On December 19, 2014, respondent filed an Answer to the Petition and a supporting memorandum ("Answer").  On February 5, 2015, petitioner filed a Traverse to the Answer ("Traverse").  On October 28, 2015, respondent filed an Answer to the Supplement and an Amended Answer to the Petition ("Supplemental Answer" or "Supp. Answer").[3]  On February 2, 2016, petitioner filed a Traverse to the Supplemental Answer ("Supplemental Traverse" or "Supp. Traverse").[4]

The parties have consented to proceed before the undersigned United States Magistrate Judge.

For the reasons stated below, the Petition and the Supplemental Petition are denied, and this action is dismissed with prejudice.

## II.   PROCEDURAL HISTORY

On May 11, 2011,  a San Bernardino County Superior Court jury found petitioner guilty of two counts of second degree robbery (counts 1 & 5), three counts of assault with a semiautomatic firearm (counts 2, 4 & 6), and one count of attempted second degree robbery (count 3).  (CT 273-78).  The jury also found multiple firearm enhancement allegations to be true.  (CT 279-84).

On July 22, 2011, the trial court sentenced petitioner to thirty-four years and eight months in state prison.  (CT 343-45, 352-53).

---

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

[3]On August 18, 2014, and October 28, 2015, respondent lodged multiple documents ("Lodged Doc."), including the Clerk's Transcript ("CT") and the Reporter's Transcript ("RT").

[4]To the extent the Traverse and Supplemental Traverse raise claims not asserted in the Petition, the Court, to the extent not addressed herein, declines to consider such claims as a Traverse is not the proper place to raise new claims.  See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994), cert. denied, 514 U.S. 1026 (1995).

On February 6, 2013, the California Court of Appeal affirmed the judgment in a reasoned opinion – rejecting petitioner's <u>Miranda</u> claim – and subsequently denied rehearing. (Lodged Docs. 6, 8). On April 17, 2013, the California Supreme Court denied review without comment. (Lodged Doc. 10).

On September 3, 2014, petitioner signed a state habeas petition ("First State Petition") which appears to have been formally filed in the San Bernardino County Superior Court on September 12, 2014, and raised his instant ineffective assistance of counsel claim. (Lodged Doc. 11).[5] On September 24, 2014, the Superior Court issued a reasoned decision rejecting the ineffective assistance of counsel claim on procedural grounds and on the merits. (Lodged Doc. 12).

On October 23, 2014, petitioner provided to prison authorities for mailing a state habeas petition ("Second State Petition") which appears to have been formally filed in the California Court of Appeal on October 29, 2014, and raised petitioner's instant ineffective assistance of counsel claim. (Lodged Doc. 13). On

///

---

[5]It appears that petitioner originally signed the First State Petition on May 15, 2014, but such date is crossed out and replaced with September 3, 2014. As best as the Court can discern from the Supplemental Traverse and petitioner's motion to amend and the exhibits attached thereto (Docket No. 24), it appears that (i) petitioner originally sent the First State Petition to the Superior Court on June 12, 2014 (per prison mail log); (ii) for reasons unknown, it was forwarded to petitioner's trial counsel whose office received it on June 16, 2014 (per date stamp of West Valley Division of the Public Defender's Office); (iii) petitioner's counsel sent the First State Petition back to petitioner on August 7-8, 2014 (per counsel's letter and envelope postmark); (iv) the Superior Court notified petitioner on or about August 22, 2014, that it was returning the First State Petition to petitioner without filing assertedly because the court had "not received a writ of habeas corpus" (per court clerk's letter); and (v) petitioner re-signed and re-submitted the First State Petition to the Superior Court on September 3, 2014. In any event, the First State Petition is accompanied by a letter from petitioner's trial counsel, Deputy Public Defender Brandon Lu. Such letter, which is dated February 17, 2010 – more than a year before the trial commenced in May 2011 (CT 187), reflects the following (1) per petitioner's request, discovery from the underlying cases then pending in Superior Court was enclosed; and (2) Lu had been unable to locate any information regarding a request or results from gunshot residue tests, or a copy of the search warrant for petitioner's home. (Lodged Doc. 11).

3

1    November 4, 2014, the California Court of Appeal denied the Second State

2    Petition without comment.  (Lodged Doc. 14).

3         On January 9, 2015, petitioner provided to prison authorities for mailing a

4    state habeas petition which appears to have been formally filed in the California

5    Supreme Court on February 13, 2015, and raised petitioner's instant ineffective

6    assistance of counsel claim ("Third State Petition").  (Lodged Doc. 15).  On April

7    22, 2015, the California Supreme Court denied the Third State Petition without

8    comment.  (Lodged Doc. 16).

9    **III.   FACTS**[6]

10        **A.    AM/PM Robbery – December 6, 2008**

11        Gloria Gutierrez and Alejandro Reyes were working at an Arco AM/PM gas

12   station in Fontana on December 6, 2008.  About 5:40 a.m., a man wearing a

13   bandana covering his face, a plaid shirt, and a black hooded sweatshirt, entered the

14   store.  The man fired a gun and then asked Gutierrez for money.  She gave him

15   $70 to $80 from the cash register while he pointed his gun toward her face from a

16   distance of two to three feet.  The man asked for money from the safe, and

17   Gutierrez told him she did not have the key.  The man became angry, and he fired

18   a second shot right past Gutierrez.

19        Reyes was working inside the cooler when he heard two abnormally loud

20   noises.  He left the cooler to investigate, and a man came out from behind

21   Gutierrez, pointed a gun at him, asked for money, and told him to open the safe.

22   Reyes said he did not have the key.  The man told Reyes to get to the ground, but

23   Reyes did not at first understand him, and the man fired three shots in Reyes's

24   direction.  The man then ran toward the Superior Market across the street.  A

25   surveillance videotape of the incident was played for the jury.

26   _____

27        [6]The facts set forth are drawn from the California Court of Appeal's decision on direct
     appeal.  (Lodged Doc. 6 at 2-6).  Such factual findings are presumed correct.  28 U.S.C.
28   § 2254(e)(1).

In January 2009, a police officer showed Reyes a photographic lineup of men with their lower faces covered, and Reyes said that petitioner's photograph, taken in 2006, resembled the robber, although the robber had looked older.

**B.     Valero Gas Station Robbery – January 23, 2009**

Dayuth Deth was working at a Valero gas station in Fontana on January 23, 2009.  About 11:00 p.m., a man wearing a hooded jacket, with something covering the lower part of his face, entered the store and wandered around for a few minutes.  The man bought a can of oil, and as he was leaving, Deth saw a gun in his jacket pocket.  Deth called 911.

Other customers cleared the store a few minutes after the man had left, and the man then reentered and pointed a gun at Deth's face and told him to put money in a bag.  Deth gave him $150 to $200 from the cash register.  The man left the gas station and went over a block wall into a field.  A surveillance videotape of the incident was played for the jury.  On January 25, Deth identified petitioner's photograph from a photographic lineup.

**C.     Police Investigation**

About 11:10 p.m. on January 23, 2009, a police officer searched the field where the suspect had run and found a magazine for a semiautomatic handgun with three bullets in it and a nine-millimeter bullet beside the magazine.  Later that night, another officer located a nine-millimeter semiautomatic Ruger handgun in another nearby field about 20 feet west of Tokay Street.  There was no magazine in the gun.

On January 24, 2009, a police officer noticed a man – petitioner – who matched the description of the Valero robbery suspect; petitioner appeared to be looking for something in the bushes near Tokay Street about 100 yards from where the gun had been found.  Petitioner told the officer he was looking for his dog, and he pointed to a dead dog nearby.  Petitioner said his dog had run away a day or two earlier, but the dead dog appeared to have been dead well over a week.

Petitioner was wearing a gray shirt, black and white shoes, and dark pants, and he had a key lanyard around his neck.  Petitioner had a scab on his right hand, and he said he had recently removed a bandage.  The man shown in the surveillance videotape of the Valero robbery had a bandage on his right hand and was wearing a gray shirt under his jacket, black and white tennis shoes, and black pants, and he had a key lanyard around his neck.

On January 25, 2009, officers executed a search warrant for the house where petitioner was renting a room.  In petitioner's room, they found a paycheck stub in petitioner's name from Superior Market and a pair of black pants similar to those worn by the suspect in the Valero robbery.  A single spent nine-millimeter shell casing was found in the pocket of the pants.  The officers also seized an empty box of Wolf nine-millimeter rounds, two bandanas, and a jacket with a hood which were similar, but not identical, to those worn by the robber in both incidents.  Petitioner was arrested for the Valero robbery.

Five spent shell casings found at the scene of the AM/PM robbery and the spent shell casing found in petitioner's pants pocket all were determined to have been fired from the recovered Ruger pistol.

Officer David Campa testified that after he learned of the ballistics results, he went to petitioner's house to interview him about the AM/PM robbery.  Officer Campa knocked on petitioner's bedroom door, and petitioner stepped out into the hallway.  Before the officer could say anything, petitioner "explained that he had already bailed out on a previous robbery and [Officer Campa] had nothing on him, the previous robbery being the Valero Gas Station one."  The officer "indicated that [the police] had evidence that led [them] to believe he was a suspect involved in an additional robbery.  And during the commission of that robbery, he fired towards the actual store clerk, trying to kill him."  Petitioner replied, "'No, no.'  He admitted to the robbery, but he said he wasn't trying to kill ///

1  nobody.  He was just shooting up in the air."  The whole exchange had happened
2  within 30 seconds, and the officer had never asked petitioner a question.

3  **D.  Defense Evidence**

4      Petitioner testified in his own behalf.  He had been working Monday
5  through Saturday in December 2008 as the night manager at the Superior Market,
6  and he usually got off work at 7:30 a.m.  His work uniform was a dark gray polo
7  shirt, black pants, and black shoes.  He did not remember where he had been on
8  January 23, 2009.  On December 6, 2008, he would have been at work.  He denied
9  committing the robberies.  The empty ammunition box found in his room was not
10 his; the box had been there since he had first rented the room in November 2008.
11 He had never seen the shell casing that had been found in his pants pocket, and he
12 did not believe the officers were being honest about finding the shell casing in his
13 pants.  He had never possessed or fired a nine-millimeter handgun and had never
14 possessed bullets for such a gun.  Tokay Street is about 50 feet from his home.
15 When he was stopped by the police on January 24, 2009, he was looking for his
16 dog.  He found the dog dead in the bushes.

17     Officer Campa had entered his bedroom without knocking in March 2009,
18 and the officer said he was going to book petitioner for attempted murder or
19 robbery.  Petitioner said he had nothing to say to the police.  Both officers had
20 their guns drawn and were pointing them at him.  He never made the statements
21 attributed to him that day.

22 **IV.  STANDARD OF REVIEW**

23     This Court may entertain a petition for writ of habeas corpus on "behalf of a
24 person in custody pursuant to the judgment of a State court only on the ground that
25 he is in custody in violation of the Constitution or laws or treaties of the United
26 States."  28 U.S.C. § 2254(a).  A federal court may not grant an application for
27 writ of habeas corpus on behalf of a person in state custody with respect to any
28 claim that was adjudicated on the merits in state court proceedings unless the

1    adjudication of the claim:  (1) "resulted in a decision that was contrary to, or

2    involved an unreasonable application of, clearly established Federal law, as

3    determined by the Supreme Court of the United States"; or (2) "resulted in a

4    decision that was based on an unreasonable determination of the facts in light of

5    the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).[7]

6         In applying the foregoing standards, federal courts look to the last reasoned

7    state court decision.  See Smith v. Hedgpeth, 706 F.3d 1099, 1102 (9th Cir.), cert.

8    denied, 133 S. Ct. 1831 (2013).  "Where there has been one reasoned state

9    judgment rejecting a federal claim, later unexplained orders upholding that

10   judgment or rejecting the same claim rest upon the same ground."  Ylst v.

11   Nunnemaker, 501 U.S. 797, 803 (1991) (cited with approval in Johnson v.

12   Williams, 133 S. Ct. 1088, 1094 n.1 (2013)); Cannedy v. Adams, 706 F.3d 1148,

13   1158 (9th Cir. 2013) (it remains Ninth Circuit practice to "look through" summary

14   denials of discretionary review to the last reasoned state-court decision), as

15   amended on denial of rehearing, 733 F.3d 794 (9th Cir. 2013), cert. denied, 134 S.

16   Ct. 1001 (2014).

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24

---

25        [7]When a federal claim has been presented to a state court and the state court has denied
26   relief, it may be presumed that the state court adjudicated the claim on the merits in the absence
     of any indication or state-law procedural principles to the contrary.  Harrington v. Richter, 562
27   U.S. 86, 99 (2011); see also Johnson v. Williams, 133 S. Ct. 1088, 1094-96 (2013) (extending
     Richter presumption to situations in which state court opinion addresses some, but not all of
28   defendant's claims).

1  **V.    DISCUSSION**[8]

2       **A.    Petitioner's <u>Miranda</u> Claim Does Not Merit Federal Habeas**

3           **Relief**

4       The Petition, construed liberally, essentially claims that petitioner's

5  "<u>Miranda</u> rights" were violated by the admission of petitioner's March 14, 2009

6  custodial statement to Officer Campa which petitioner made in response to

7  "official interrogation" – namely an "inflammatory accusation" by Officer Campa

8  which prompted an incriminating response.  (Petition at 5).  The California Court

9  of Appeal – the last state court to render a reasoned decision on the issue –

10 rejected this claim on its merits, finding that no interrogation had taken place, and

11 deeming it unnecessary to determine whether petitioner was in fact in custody

12 when he had made the statement in issue.  (Lodged Doc. 6 at 9-16 & n.3).

13 Petitioner is not entitled to federal habeas relief on this claim.

14           **1.    Pertinent Facts**[9]

15      Before trial, petitioner moved to suppress the statement he made to Officer

16 Campa on March 14, 2009.  At the hearing on the motion, Officer Campa testified

17 he had gone to the Fontana residence where petitioner rented a room.  The officer

18 did not have an arrest warrant or search warrant; he wanted to talk to petitioner

19 about petitioner being a possible suspect in the AM/PM robbery.  He knew

20

21  ───────────────

22      [8]The Court has read, considered and rejected on the merits all of petitioner's contentions.
    The Court discusses petitioner's principal contentions herein.  Although respondent addresses
23  petitioner's claims on their merits, respondent also contends that petitioner's ineffective
    assistance of counsel claim is time-barred.  As petitioner's ineffective assistance of counsel claim
24  is without merit, the Court need not address the potential time bar issue.  <u>See</u> <u>Van Buskirk v.</u>
    <u>Baldwin</u>, 265 F.3d 1080, 1083 (9th Cir. 2001) (court need not reach "complex questions lurking
25  in time bar of [18 U.S.C. § 2244(d)]" when it can decide case on merits), <u>cert. denied</u>, 535 U.S.
    950 (2002).
26

27      [9]The facts set forth are drawn from the California Court of Appeal's decision on direct
    appeal.  (Lodged Doc. 6 at 6-8).  Such factual findings are presumed correct.  28 U.S.C. §
28  2254(e)(1).

1  petitioner had been arrested for the Valero robbery and that a spent shell casing
2  had been found in petitioner's bedroom and that the shell casing matched those at
3  the AM/PM.

4      Officer Campa, accompanied by Officer Snyder, was admitted into the
5  residence by the homeowner.  The officers went to petitioner's room and knocked
6  on the door.  Petitioner opened the door and stepped out into the hallway.  Without
7  being questioned, petitioner said he was already out on bail in a case, and the
8  officer had nothing on him.  Officer Campa testified he had explained to petitioner
9  that they had evidence indicating petitioner was a suspect in another armed
10 robbery during which he had shot several rounds at a clerk, trying to kill him.
11 Petitioner said, "No, no, no."  He admitted to the armed robbery but denied he had
12 been trying to kill anyone; he had just been shooting up in the air.  Officer Snyder
13 never said anything to petitioner.

14      Officer Campa was wearing his police gang unit uniform and was carrying a
15 gun, which remained holstered; Officer Snyder was similarly dressed.  Officer
16 Campa did not tell petitioner he was under arrest, did not handcuff him, and did
17 not give him any orders.  Neither officer drew his gun.  Petitioner made his
18 inculpatory statement within one minute from when the encounter began.  The
19 officer did not record petitioner's statement because it "happened all of a sudden,"
20 and he "wasn't expecting [petitioner] to make the statement."

21      After petitioner made the statement, Officer Campa took him outside and
22 arrested him.  His original intention had been to take petitioner outside to talk in
23 the police vehicle or to ask him to accompany him to the police department, but he
24 never had a chance to do that.

25      The trial court found that petitioner had been in "the functional equivalent
26 of an arrest" when he made his statement, but that no interrogation had taken
27 place.  The court explained:  "The analysis then switches to whether interrogation
28 occurred.  And it doesn't require express[] questioning, but it requires either

1   express[] questioning or the functional equivalent.  And in a case where an officer

2   is explaining why he's there to talk to somebody or what he's being arrested for or

3   detained for, I don't think that arises to the functional equivalent of an

4   interrogation.  [¶] In this matter the officer indicated, in clarification for

5   [petitioner's] edification, that there wasn't a mistake, that he already – that the

6   petitioner had indicated he was – had already been arrested and bailed out in a

7   particular incident.  The officer was explaining that, no, there's something else we

8   need to talk to you about, but there wasn't questioning that occurred."

9                              **2.    Pertinent Law**

10          In Miranda, the United States Supreme Court held that "the prosecution may

11  not use statements, whether exculpatory or inculpatory, stemming from custodial

12  interrogation of the defendant unless it demonstrates the use of procedural

13  safeguards effective to secure the privilege against self-incrimination [under the

14  Fifth and Fourteenth Amendments to the Constitution]."  Miranda, 384 U.S. at

15  444;[10] see also Dickerson v. United States, 530 U.S. 428, 431 (2000) (holding that

16  "*Miranda* and its progeny in this Court govern the admissibility of statements

17  made during custodial interrogation in both state and federal courts").

18          Under Miranda, police "interrogation" includes both "express questioning"

19  of a suspect and the "functional equivalent" thereof – that is "[any] practice that

20  the police should know is reasonably likely to evoke an incriminating response

21  from a suspect . . . ."  Rhode Island v. Innis, 446 U.S. 291, 301-02 (1980) (citation,

22  quotation marks, and footnote omitted).  "Interrogation" for purposes of Miranda

23  "must reflect a measure of compulsion above and beyond that inherent in custody

24  itself."  Innis, 446 U.S. at 300 (footnote omitted).  Hence, not all statements

25

26          [10]These "procedural safeguards" require that a person in custody "first be informed in
    clear and unequivocal terms that he has the right to remain silent," "that anything said can and
27  will be used against the individual in court," that he has "a right to consult with a lawyer and to
    have the lawyer with him during interrogation," and that "if he is indigent a lawyer will be
28  appointed to represent him."  Miranda, 384 U.S. at 467-73, 479.

obtained by police while a suspect is in custody are necessarily "the product of interrogation." Id. at 299-300 ("[v]olunteered statements" not barred by Fifth Amendment) (quoting Miranda, 384 U.S. at 478) (internal quotation marks omitted).

### 3. Analysis

Petitioner claims that the admission of his statement to the effect that he had committed the AM/PM robbery but had only shot in the air, violated Miranda because it was made in response to a statement of Officer Campa which constituted interrogation. (Petition at 5). As this Court cannot conclude that the California Court of Appeal's determination that Officer Campa's statement did not constitute interrogation was objectively unreasonable, petitioner is not entitled to habeas relief on this claim.

In rejecting petitioner's instant claim, the California Court of Appeal undertook a lengthy analysis of Innis and multiple state cases, distinguished multiple state cases in which police statements were deemed to constitute interrogation, and concluded that Officer Campa's statement in issue was not the functional equivalent of interrogation:

> Officer Campa made a single statement in response to [petitioner's] assertion that he was out on bail on a robbery charge, and the officers had nothing on him. Officer Campa's statement had the legitimate purpose of informing [petitioner] of the possible new charge the officers wished to discuss with him.[]

(Lodged Doc. 6 at 12-13) (footnote omitted). The Court of Appeal further noted that carrying petitioner's argument to its logical conclusion would mean that it would always be a violation of Miranda for officers to tell any subject in custody what crime they wanted to interview him about unless the officers first administered Miranda admonishments. (Lodged Doc. 6 at 13, n.4). It further reasoned:

1  [Officer Campa] did not ask a direct question of [petitioner] and did

2  not engage in an extended dialogue with him. . . [T]he officer's

3  statement about the AM/PM robbery was in response to [petitioner's]

4  assertion that he was already out on bail and the officers had nothing

5  on him; the officer's statement thus served merely to clarify to

6  [petitioner] which of the robberies they wished to discuss with him.

7  (Lodged Doc. 6 at 14).

8      This Court cannot conclude on these facts that the Court of Appeal's finding

9  and application of <u>Miranda</u> and <u>Innis</u> were "objectively unreasonable" – that is,

10 erroneous "beyond any possibility of fairminded disagreement." <u>White v.</u>

11 <u>Woodall</u>, 134 S. Ct. 1697, 1702 (2014) (citation and internal quotation marks

12 omitted).

13     In sum, the California Court of Appeal's rejection of petitioner's <u>Miranda</u>

14 claim was not contrary to, or an unreasonable application of clearly established

15 federal law.  Nor was it based on an unreasonable determination of the facts in

16 light of the evidence presented.  Accordingly, petitioner is not entitled to federal

17 habeas relief on this basis.

18     **B.    Petitioner Is Not Entitled to Federal Habeas Relief on His**

19          **Ineffective Assistance of Counsel Claim**

20     Petitioner claims that his trial counsel was ineffective in failing to challenge

21 the January 25, 2009 seizure of evidence from petitioner's residence.

22 The San Bernardino County Superior Court – the last state court to issue a

23 reasoned decision addressing such claim – rejected it based upon, among other

24 things, the merits.  Petitioner is not entitled to federal habeas relief on this claim.

25 ///

26 ///

27 ///

28 ///

13

1    **1.    Pertinent Facts**[11]

2       On January 25, 2009, Officer Matt Kraut attested to the following facts

3    contained in a search warrant affidavit:

4       On December 6, 2008, an armed robbery and attempted murder occurred at

5    a Fontana service station convenience store [referring to the AM/PM robbery].

6    The suspect entered the store wearing a bandana over his face and a hooded jacket.

7    The suspect brandished a handgun and demanded money from the clerk.  During

8    the robbery the suspect pointed the handgun at the employees and fired several

9    times.  No one was struck by the gunfire and the victim clerks complied with the

10   demands and gave the suspect approximately one hundred fifty dollars from the

11   register.  The suspect fled and was observed by witnesses.  The suspect was seen

12   running southbound from the location and observation was lost as the suspect ran

13   southbound on Concord Avenue from Mission Drive.  The suspect was described

14   as a young Hispanic male wearing a plaid hooded jacket and a blue bandana on his

15   face.

16      On January 23, 2009, an armed robbery occurred at a different Fontana

17   convenience store [referring to the Valero robbery].  The suspect in the robbery

18   entered the store wearing a bandana over his face and a hooded jacket.  The

19   suspect brandished a handgun and demanded money from the clerk.  The victim

20   clerk relinquished approximately two hundred dollars in cash and the suspect fled

21   the location.  The suspect in the second robbery was also described as a young

22   male Hispanic wearing a black and white plaid hooded jacket and a blue bandana

23   covering the lower portion of his face.  While officers checked the area, a handgun

24   and magazine were located on Tokay Avenue north of Arrow Blvd.  The location

25   of the recovered gun in relation to the location of the second robbery is along the

26

27         [11]Except as otherwise indicated, the facts set forth are drawn from the referenced search
     warrant and search warrant affidavit and the related return and receipt for property taken.
28   (Lodged Doc. 17).

14

same path and within the close proximity of the block of Concord Avenue in which the suspect from the first robbery was seen.

On January 24, 2009, Fontana officers located a suspicious subject searching in the bushes on Tokay Avenue, only a short distance from where the handgun had been recovered. The subject was contacted and identified himself as [petitioner]. [Petitioner] claimed he was in the area looking for his dog. [Petitioner] then resided at [a Concord Avenue address, hereinafter "Concord Address" or "petitioner's residence"]. During that contact, Kraut noticed that [petitioner] was wearing a pair of black and white shoes and a key lanyard around his neck.

On January 25, 2009, Kraut showed the victim of the second robbery a six-pack photographic lineup, which included a previous booking photo of [petitioner]. Facial coverings consistent with that of bandanas were added to each of the six photographs. The victim positively identified [petitioner] as the robbery suspect from January 23, 2009.[12] After such contact with the victim, Kraut watched a copy of the video surveillance from the second robbery. He noted that the suspect was the same size and stature as [petitioner]. The suspect was also wearing the same shoes and key lanyard as [petitioner] had been wearing on January 24, 2009.

///

[12]At trial, the victim in issue – Dayuth Deth – testified that he told the officer who showed him the six-pack photographic lineup (Officer Kraut), that petitioner's photograph "look[ed] like" the robber and that he had circled and initialed the photograph of the robber. However, he vacillated as to whether he had told the officer that he was "sure" or "not sure" about his identification. (RT 212-13). Officer Kraut testified at trial that when he showed Deth the six-pack photographic line-up, Deth "quickly" ("within seconds") pointed to petitioner's photograph and said "That's the guy who robbed me." (RT 298). Officer Kraut asked Deth if he was sure, and Deth said "Yes, he [Deth] was sure." (RT 299). Officer Kraut then advised Deth that if he was sure, to go ahead and circle the picture he had selected and to put his initials inside that circle. (RT 299).

On January 25, 2009, Kraut located and arrested [petitioner].  The shoes were recovered as evidence, however, the jacket, bandana and key lanyard were outstanding.  Kraut also made contact with the homeowner of the Concord Address who confirmed that [petitioner] resided there.

Based upon Kraut's affidavit, a Judge of the San Bernardino County Superior Court found probable cause to believe that petitioner's residence contained, among other things, property that was used as a means of committing a felony and would tend to show that a particular person committed a felony and issued a search warrant authorizing law enforcement authorities to search petitioner's residence and to seize, among other things, firearms, illegal weapons, items depicting or memorializing weapons violations, items tending to establish the identity of persons having dominion and control over the premises, and any and all items of clothing and personal property evidencing a link to the crimes described in the affidavit, such as shoes, clothing, bandanas, and hooded jackets.

On January 25, 2009, law enforcement officers executed the search warrant at petitioner's residence, and seized from petitioner's bedroom, an empty box of 9mm Wolf Luger ammunition, a spent 9mm casing (Wolf), a black/grey hooded jacket, a pair of black pants, two bandanas, and a check stub in petitioner's name. A receipt for the property taken was delivered to the homeowner (or posted at petitioner's residence) prior to the executing officers leaving the premises.  A search warrant Return reflecting the seizure of the foregoing items was filed in Superior Court on February 2, 2009.

As detailed in Part IIIC, supra, the foregoing items (or photographs thereof) were introduced at petitioner's trial.  (RT 302-308).

### 2.   Pertinent Law

#### a.   Fourth Amendment Principles

The Fourth Amendment, which applies to the states through the Fourteenth Amendment, protects against unreasonable searches and seizures by law

enforcement officers.  Mapp v. Ohio, 367 U.S. 643, 655 (1961).  In general, a seizure of personal property by police must be "accomplished pursuant to a judicial warrant issued upon probable cause. . . ."  United States v. Place, 462 U.S. 696, 701 (1983).  Probable cause determinations are to be made by viewing the totality of the circumstances set forth in the affidavit presented in support of the issuance of the warrant.  Illinois v. Gates, 462 U.S. 213, 238 (1983).[13]

In general, challenges to the adequacy of a state search warrant's probable cause determination may be lodged through a motion to quash or a motion to traverse.  People v. Heslington, 195 Cal. App. 4th 947, 957 n.7 (2011); see also Cal. Penal Code § 1538.5 (generally describing bases for motions to suppress evidence).  A motion to quash "asserts the warrant on its face lacks probable cause," while a motion to traverse attacks "'the underlying veracity of statements made on the face of the search warrant application.'"  People v. Heslington, 195 Cal. App. 4th at 957 n.7  (citation omitted).  As to the latter, "the defendant must demonstrate that (1) the affidavit included a false statement made 'knowingly and

---

[13]To be valid, a warrant must describe with particularity the locations that may be searched and the types of items that may be seized.  See Dawson v. City of Seattle, 435 F.3d 1054, 1064 (9th Cir. 2006) (citations omitted).  A seizure violates the Fourth Amendment if it exceeds the scope of the warrant that initially authorized the search.  Horton v. California, 496 U.S. 128, 140 (1990).  Petitioner does not contend that the search warrant in this case lacked particularity or that the searching officers exceeded the scope of the warrant.  His Supplemental Petition, construed liberally, can be read to challenge the executing officers' asserted failure to display or provide him with a copy of the warrant concurrently with the execution of the warrant. (Supp. Petition at 8).  Petitioner fails, however, to cite any authority for the proposition that the United States Constitution or California state law required the officers to do so, or that the failure to do so would warrant the exclusion of evidence seized pursuant to the warrant.  See, e.g., Groh v. Ramirez, 540 U.S. 551, 562 n.5 (2004) (Fourth Amendment does not require executing officer to serve warrant on owner before commencing search; declining to reach issue of whether it would be unreasonable to refuse to furnish warrant at outset upon request in specified circumstances); People v. Calabrese, 101 Cal. App. 4th 79, 83-85 (2002) (affirming trial court's denial of motion to suppress where defendant based motion on executing officers' failure to show him copy of warrant as United States Supreme Court has never interpreted Fourth Amendment to require the same, California Supreme Court has never required suppression in such circumstance, and California Constitution forbade suppression of evidence on such ground).

1  intentionally, or with reckless disregard for the truth,' and (2) 'the allegedly false

2  statement is necessary to the finding of probable cause.'"  People v. Hobbs, 7

3  Cal.4th 948, 974 (1994) (quoting Franks v. Delaware, 438 U.S. 154, 165 (1978)).

### b.   Ineffective Assistance of Counsel

5  The Sixth Amendment guarantees the effective assistance of counsel at trial.

6  See Strickland v. Washington, 466 U.S. 668, 686 (1984).  To establish ineffective

7  assistance by his trial counsel, petitioner must demonstrate both that:

8  (1) counsel's performance was deficient; and (2) the deficient performance

9  prejudiced his defense.  Id. at 688–93; see also Knowles v. Mirzayance, 556 U.S.

10  111, 124 (2009) ("Strickland requires a defendant to establish deficient

11  performance and prejudice"); Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per

12  curiam) (the Sixth Amendment right "is denied when a defense attorney's

13  performance falls below an objective standard of reasonableness and thereby

14  prejudices the defense").  As both prongs of the Strickland test must be satisfied to

15  establish a constitutional violation, failure to satisfy either prong requires that an

16  ineffective assistance claim be denied.  See Strickland, 466 U.S. at 697 (no need to

17  address deficiency of performance if prejudice is examined first and found

18  lacking); Rios v. Rocha, 299 F.3d 796, 805 (9th Cir. 2002) ("Failure to satisfy

19  either prong of the Strickland test obviates the need to consider the other.").

20  To prevail on a claim of ineffective assistance of counsel predicated on the

21  failure to file a motion to suppress evidence, a petitioner must establish that the

22  motion would have been meritorious and a reasonable probability that the jury

23  would have reached a different verdict absent the introduction of the evidence in

24  issue.  Kimmelman v. Morrison, 477 U.S. 365, 375 (1986); Ortiz-Sandoval v.

25  Clarke, 323 F.3d 1165, 1170 (9th Cir. 2003).

26  Where, as here, there has been a state court decision rejecting a Strickland

27  claim, review is "doubly deferential."  Harrington v. Richter, 562 U.S. 86, 131

28  S. Ct. 770, 788 (2011) (citing Mirzayance, 556 U.S. at 123); 28 U.S.C. § 2254(d).

1  A state court's decision rejecting a <u>Strickland</u> claim is entitled to "a deference and
2  latitude that are not in operation when the case involves review under the
3  <u>Strickland</u> standard itself." <u>Richter</u>, 131 S. Ct. at 785; <u>see also</u> <u>Padilla v.</u>
4  <u>Kentucky</u>, 559 U.S. 356 (2010) (noting, "There is no reason to doubt that lower
5  courts – now quite experienced with applying <u>Strickland</u> – can effectively and
6  efficiently use its framework to separate specious claims from those with
7  substantial merit."). "The pivotal question is whether the state court's application
8  of the <u>Strickland</u> standard was unreasonable. <u>Richter</u>, 131 S. Ct. at 785; 28 U.S.C.
9  § 2254(d). "[E]ven a strong case for relief does not mean the state court's contrary
10  conclusion was unreasonable." <u>Richter</u>, 131 S. Ct. at 786.  The range of
11  reasonable <u>Strickland</u> applications is "substantial." <u>Id.</u> at 788; 28 U.S.C.
12  § 2254(d)(1).

### 3.    Analysis

14  The Superior Court reasonably rejected petitioner's ineffective assistance of
15  counsel claim on its merits.  As the Superior Court explained:

16          [Petitioner] alleg[es] that he received ineffective assistance of
17          trial counsel because his attorney failed to obtain a copy of the search
18          warrant and failed to research anything related to the search warrant
19          and the search warrant was somehow invalid as it was never produced
20          prior to the search.

21                                    * * *

22          In order to establish he is entitled to habeas corpus relief for
23          ineffective assistance of counsel, petitioner must demonstrate that his
24          counsel's performance was deficient, and that the deficient
25          performance prejudiced him.  [Citation].  Petitioner bears a heavy
26          burden to plead sufficient grounds for relief.  [Citation].  Here, there
27          was overwhelming evidence that the petitioner committed the robbery
28          without relying on the items retrieved from his residence.  This

1   evidence included witness identification, and contact with officers in

2   a field near where one of the robberies occurred and where the gun

3   used in the robberies was located, at which time the officer was able

4   to identify the petitioner as matching the description of the person the

5   officer had observed in the surveillance videotape robbing the gas

6   station.  Given this evidence, defense counsel's failure to obtain the

7   search warrant without more, does not provide a sufficient basis to

8   show that counsel was deficient, and even if counsel was deficient,

9   petitioner has failed to show he was prejudiced by any deficiency.

10   (Lodged Doc. 12 at 1-3) (internal citations and quotation marks omitted).

11   The Superior Court's conclusions are supported by the record and its

12   application of Strickland is not objectively unreasonable.

13   Moreover, even alternatively reviewing the matter de novo, this Court

14   concludes that petitioner fails to demonstrate either that his counsel was deficient

15   or that petitioner was prejudiced by his counsel's alleged failure relative to the

16   search warrant.

17   First, to the extent petitioner contends that his counsel was deficient for

18   failing to obtain a copy of the search warrant, he fails to so demonstrate.  While

19   the record supports petitioner's contention that his counsel did not have a copy of

20   the search warrant as of February 17, 2010 (see supra note 5), petitioner's trial did

21   not commence until more than a year later in May 2011.  (CT 187).  There is no

22   basis in the record to conclude that at some point after February 17, 2010,

23   petitioner's counsel did not timely obtain and/or review the search warrant and

24   supporting documents and conclude that there was no viable ground to seek

25   suppression of the evidence seized during the search of petitioner's residence

26   pursuant to the warrant.

27   Second, even assuming petitioner's counsel never obtained/reviewed a copy

28   of the search warrant and supporting documents, failed to interview the victim of

20

1  the Valero robbery whose identification of petitioner was referenced in the search
2  warrant affidavit, and failed to file a motion to suppress evidence seized from
3  petitioner's home pursuant to such warrant, petitioner fails to show that he was
4  prejudiced.  More specifically, petitioner does not demonstrate that a motion to
5  suppress evidence seized pursuant to such warrant would have been meritorious.
6  See Kimmelman, 477 U.S. at 375.  Petitioner essentially contends that the
7  evidence seized pursuant to the search warrant should have been suppressed both
8  because (1) the search warrant affidavit, on its face, did not establish probable
9  cause to believe that petitioner committed the AM/PM robbery; and (2) the
10 affidavit was misleading in that it:  (a) did not reflect that Deth – the victim of the
11 Valero robbery – was unsure of his "positive" identification (see supra note 12);
12 (b) incorrectly reflected that the bandana worn by the AM/PM robber was blue
13 (like the bandana worn by the Valero robber); and (c) did not reflect that the plaid
14 hooded jacket worn by the AM/PM robber was a different plaid hooded jacket
15 than that worn by the Valero robber.  (Supp. Pet. at 14-15, 20; Supp. Traverse at
16 13-15).  Petitioner's contentions are without merit.

17        A facial challenge to the search warrant affidavit would not have been
18 meritorious because the totality of the circumstances described in the affidavit
19 supported the issuing judge's finding that there was probable cause to believe that
20 the specified evidence of both the AM/PM and Valero robberies would be found
21 in petitioner's residence.  As to the Valero robbery, the affidavit reflects that
22 (i) the robber was a young Hispanic man, like petitioner; (ii) the robber was the
23 same size and stature as petitioner; (iii) the robber wore a bandana over the lower
24 portion of his face, a plaid hooded jacket, a pair of black and white shoes, and a
25 key lanyard, and petitioner was wearing the same shoes and a key lanyard around
26 his neck the next day; (iv) the robber brandished a handgun during the robbery, a
27 handgun and magazine were found in the area on the day of the robbery, and
28 petitioner was searching bushes a short distance from where the gun was found on

21

1   the day after the robbery; (v) petitioner lived at the Concord Address, near the area

2   and the store robbed; and (vi) when shown a photographic lineup containing six

3   photographs of men whose lower faces were covered, the victim of the robbery

4   positively identified petitioner as the robber.  The foregoing amply supports a

5   finding of probable cause relative to the Valero robbery.

6       The affidavit also established probable cause that petitioner committed the

7   AM/PM robbery because the facts set forth, as detailed above, amply supported an

8   inference that petitioner committed the Valero robbery and because it set out

9   similarities between the two robbers and robberies which supported the inference

10  that the same person probably committed both robberies.  Both robberies targeted

11  gas station convenience stores in the same geographic area, near petitioner's

12  residence.  Both robbers were young Hispanic males wearing plaid hooded jackets

13  and bandanas over their lower faces, who brandished firearms, demanded money,

14  and fled.  The issuing judge, considering the totality of the circumstances, properly

15  found probable cause relative to both the AM/PM and the Valero robberies.  As

16  petitioner cannot demonstrate that a motion to suppress predicated on a facial

17  challenge to the search warrant would have been meritorious, he accordingly fails

18  to demonstrate that he was prejudiced by his trial counsel's failure to make such a

19  motion.

20      Petitioner likewise fails to demonstrate that a subfacial challenge to the

21  search warrant affidavit would have been meritorious so as to establish prejudice

22  arising from his counsel's failure to investigate and seek suppression of the

23  evidence seized pursuant to the search warrant on such basis.  Even if this Court

24  accepts as true all of petitioner's allegations regarding misstatements and

25  omissions in Kraut's affidavit, petitioner must still show that the affidavit purged

26  of those falsities and supplemented by the omissions would not be sufficient to

27  support a finding of probable cause.  See United States v. Stanert, 762 F.2d 775,

28  782 (9th Cir. 1985) (defendant challenging search warrant affidavit based upon

Franks v. Delaware must show that affidavit purged of falsities and supplemented by omissions of fact which tended to mislead, would not be sufficient to support finding of probable cause, with the effect of the misrepresentations and omissions to be considered cumulatively) (citing Franks v. Delaware, 438 U.S. at 171-72), amended in non-pertinent part, 769 F.2d 1410 (9th Cir. 1985).  He cannot do so. More specifically, even assuming the affidavit reflected that Deth stated, as he testified at trial, only that petitioner "looked like" the robber, but was "not sure" if it was him, omitted the color of the bandana worn by the AM/PM robber, and reflected that the two robbers wore different plaid jackets, the remaining undisputed facts in the affidavit – detailed above – still supported a finding that there was probable cause to believe that petitioner's residence contained the specified items to be seized, including those which actually were ultimately seized.

In short, petitioner is not entitled to federal habeas relief on his ineffective assistance of counsel claim because his claim is without merit and fails under any standard of review.

## VI.   ORDERS

IT IS THEREFORE ORDERED that (1) the Petition and Supplement are denied and this action is dismissed with prejudice; and (2) Judgment shall be entered accordingly.

DATED:  February 27, 2016

_____ /s/ _____

Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

23